No. 3864

Second Circuit

——

## HORTON v. KAVANAUGH-HINTON MOTOR COMPANY

——

(December 23, 1930. Opinion and Decree.)

——

Lester & Madden, of Monroe, attorneys for plaintiff, appellant.

Dhu Thompson, of Monroe, attorney for defendant, appellee.

WEBB, J. On July 5, 1929, defendant, Kavanaugh-Hinton Motor Company, sold to plaintiff, Robert Horton, an automobile at the price of $1,173, of which amount $363 was acknowledged to have been paid in cash (which amount was, however, represented by a secondhand automobile on which there was a mortgage of $156, which was to be paid by defendant, plaintiff delivering to defendant $56 and a note for $100, payable on September 3, 1929), and, for the balance of the price, plaintiff gave defendant one note, payable to the order of defendant, which was signed by plaintiff and O. T. Adams, to be paid in eighteen monthly installments beginning on August 3, 1929, secured by a vendor's lien and chattel mortgage on the automobile.

Defendant indorsed and transferred the mortgage note to the General Motors Finance Company, to which plaintiff paid three of the installments, but, failing to pay other installments as they fell due, J. G. Kavanaugh, one of the members of defendant company, called upon plaintiff, and, after some discussion of the past due indebtedness, obtained possession of the automobile, which was delivered by defendant to O. T. Adams, the accommodation drawer on the mortgage note.

The present action was brought on January 6, 1930, in which plaintiff alleged that his automobile of the value of $1,173, had been illegally sold by defendant without plaintiff's consent and plaintiff prayed for judgment against defendant for the value of the automobile, with interest from demand.

Defendant excepted that the petition failed to state a cause of action, which was overruled, and defendant then answered denying plaintiff's allegations, and alleged the facts above stated, and that plaintiff had voluntarily delivered the automobile to defendant in satisfaction of his outstanding obligation to the finance company, and further alleged that, in event it should be held that plaintiff had not voluntarily delivered the automobile in satisfaction of the indebtedness due the finance company; that defendant had been forced to pay the mortgage on the automobile traded by plaintiff to defendant on the purchase price, and that plaintiff had not paid the note of one hundred dollars given to defendant, and that plaintiff also was indebted to defendant in the further sum of $22.50 for accessories purchased by plaintiff; and in event of judgment being rendered in favor of plaintiff in any amount, defendant prayed for judgment against plaintiff in reconvention for the amount due by plaintiff on the chattel mortgage note and other amounts above stated, or a total of $797, with interest. On trial, judgment was rendered rejecting plaintiff's demands, and he alone appeals.

The evidence concededly established that plaintiff had voluntarily delivered the car to defendant as the representative of the General Motors Finance Company, but plaintiff contends the delivery was made under the condition that the car would be stored until plaintiff could make arrangements to obtain funds to pay the past-due installments, while defendant contends that the car was delivered in payment of the amount due by plaintiff on the mortgage note.

Both parties agree that the conversation leading up to the delivery of the car related to the past-due payments; the failure of plaintiff to pay and the financial ability of plaintiff to make the payments, as well as the question of defendant taking the car. That plaintiff pretended he had remitted one payment which had not been received, and J. G. Kavanaugh said that, after plaintiff pretended to search for the receipt, he admitted he had not made any remittance, and that he (Kavanaugh) asked plaintiff what he wanted him to do, and that plaintiff said, "There's only one thing you can do, and that is to take the car"; and, while plaintiff does not deny the general trend of the conversation, he said the car was delivered under the agreement as above stated that the car would be stored, etc.

There was some evidence introduced tending to support the version of both of the witnesses, but we find that the great preponderance of the evidence supports the version of Kavanaugh as to what was said. But the statement attributed to plaintiff by Kavanaugh does not show there was any agreement that the car was delivered in payment of the amount due by plaintiff on the note, or that it would be sold and the proceeds applied to the payment of the debt. However, under the stipulation of the act of mortgage granted by plaintiff, it was declared that on default in payment of any of the installments, all installments unpaid should become due; and, the act of mortgage importing confession of judgment, the holder was authorized to proceed by summary process against the automobile, sell same, and apply the proceeds to the payment of the note, or to take possession of the automobile and sell same either at public or private sale and apply the proceeds to the payment of the note. While the latter stipulation may not have been enforceable without the consent of plaintiff, he had the right to consent to such proceedings, and the evidence establishing that plaintiff had previously offered to deliver the car for the balance due on the note, and that he delivered the car to defendant as the agent of the finance company, and the circumstances attending the delivery of the automobile, show, we think, that plaintiff at least knew the car was to be sold, and we are of the opinion that plaintiff should be held to have impliedly consented to the car being sold.

Plaintiff knew that the car had been delivered to Adams, plaintiff's accommodation drawer on the note, to whom the car was transferred for the balance due on the note, and we do not think that plaintiff can repudiate the sale and recover in an action against defendant for converting the property to its own use, and thus obtain the advantage of having been released from his obligation to pay through the asserted illegal actions of defendant.

The most that plaintiff could recover would be the difference between the price obtained by defendant for the car, and the price which could have been obtained for the car; and, while there was some evidence introduced tending to establish that the car was worth more than the amount due thereon by plaintiff, there is not any suggestion that the car could have been sold at a better price than that obtained by defendant.

The judgment appealed from is therefore affirmed, at appellant's cost.