169 So. 576

**REED v. BYRNES.**

No. 33434.

June 30, 1936.

Wayne Stovall and W. T. Holloway, both of Jonesboro, for appellant.

R. W. Oglesby, of Winnfield, for appellee.

HIGGINS, Justice.

Plaintiff claims $2,812, as damages for the alleged illegal repossession of his truck by the defendant, who held a vendor's lien and chattel mortgage thereon for the sum of $588. The exceptions of no right or cause of action filed by defendant were overruled and he answered, denying liability and averring that the plaintiff consented

to the repossession and sale of the truck, in order to liquidate the balance due thereon.

There was judgment in favor of the plaintiff for the sum of $1 and costs, and he appealed. The defendant answered the appeal and asks that the suit be dismissed.

The evidence shows the plaintiff desired to purchase a new V-8 Ford truck from the defendant, who was skeptical as to plaintiff's credit risk, but acceded to the recommendations of his salesman, Mr. Sims, and made the sale. In order to meet the requirements for a cash down payment of $224, defendant accepted plaintiff's old Chevrolet truck in trade at an appraised value of $75, his unsecured demand note for the sum of $60, with a confession of judgment, and $89 in cash, $50 of which plaintiff had borrowed from A. D. Jones. The balance of $588 was represented by a note payable in 12 equal installments of $49, on the 10th of each and every month thereafter; the chattel mortgage being dated October 10, 1933.

The plaintiff used the truck for the purpose of hauling cordwood for the Southern Advance Bag & Paper Co., at $1.50 per cord, and, between the dates of October 10, 1933, and November 25, 1933, earned the sum of $200.43. He paid Mr. Jones the $50 that he borrowed, and on November 8, 1933, paid the defendant the sum of $30, and again, on November 11, 1933, $10, which amounts were credited on the $60 demand note. These two payments were made only after Mr. Sims had made several visits to the plaintiff to remind him of his promise to liquidate the demand

note at once out of the sale price of certain cotton that the plaintiff owned and agreed to dispose of, in order to pay that note. Mr. Sims, as defendant's representative, made several trips from Winnfield to Jonesboro, to inform the plaintiff that the first installment on his note due November 10, 1933, was delinquent, and after considerable difficulty, located plaintiff, giving him this information and warning him that the chattel mortgage provided that time was of the essence of the agreement and defendant was insisting upon payments being made promptly, as plaintiff had promised. Plaintiff pointed out that he had earned about $200 by hauling with the truck, but that the pay day was not until November 20th, at which time he would pay the first installment. Mr. Sims reluctantly consented to endeavor to prevail upon the defendant, his employer, to accommodate plaintiff by waiting until the 20th, and this extension was granted. Between the 20th and 25th, Mr. Sims made a number of efforts to find the plaintiff, but was unsuccessful, and in the meantime learned that the plaintiff had withdrawn $122 from the Bag & Paper Company.

On Saturday, November 25th, at about 4:30 p. m., Mr. Sims located the truck at a garage and oil station at Hodge, La.; plaintiff's 21 year old son being in charge of it. He inquired of the young man where his father was and was told that he did not know, but perhaps he was in the woods. Mr. Sims took the key from the truck and then went to find plaintiff, whom he located about 6 o'clock p. m. He informed plaintiff that unless $49 was paid immediately, he had been instructed to repossess

the truck. Plaintiff said he did not have the money, but would get it, and then Mr. Sims suggested that he would store the truck at the garage at Hodge until Monday morning at 9 o'clock, when he would meet plaintiff there, receive the payment, and return the truck. Plaintiff acquiesced in this proposed arrangement and, although Mr. Sims went to the garage at 9 o'clock Monday morning, November 27th, and remained there until about 12:30 noon, plaintiff did not appear. The truck was then taken to defendant's place of business at Winnfield. During the late afternoon of that same day, one of the defendant's customers saw the truck and offered to purchase it for the balance that plaintiff owed the defendant. Defendant informed the prospective purchaser of plaintiff's interest in the truck and entered into an agreement to sell it to the customer, provided the plaintiff did not appear and claim it and pay the amount past due. The customer deposited $20 to bind the agreement.

The truck, which was new when it was purchased by the plaintiff, had been used for rough service over bad roads in the country and in the woods and had been driven 2,400 miles at the time it had been repossessed and was also slightly damaged and needed greasing and lubrication.

On Tuesday, November 28th, while Mr. Sims was in Jonesboro on business, the plaintiff approached him and stated that he had raised the money and wanted to get his truck back. Mr. Sims informed him that the matter was entirely out of his hands and that plaintiff could secure the return of his truck by going to Winnfield and

paying the defendant the amount due. Plaintiff did not go to Winnfield and never asked defendant or any of his representatives for the truck. The first information plaintiff conveyed to the defendant of his dissatisfaction was by filing this suit on December 19, 1933.

The chattel mortgage contained the following provision: " * * * Or the mortgagee may and is hereby authorized to take immediate possession of said property, including any equipment or accessories thereto, without legal process (without demand) (possession after default being unlawful) and for this purpose the mortgagee may enter upon the premises, where the said property may be and remove the same. Mortgagee may take possession of any other property in above described motor vehicle at the time of repossession and hold the same temporarily for the· mortgagor without any responsibility or liability on the part of the mortgagee. The mortgagee may resell said property, so retaken, at public or private sale, without demand for performance, with or without notice to the mortgagor (if notice is given by mail the address below being sufficient) with or without appraisement with or without having such property at the place of sale, and upon such terms and in such manner as the mortgagee may determine; the mortgagee may bid at any public sale. From the proceeds of any such sale, the mortgagee shall deduct all expenses for retaking and selling such property, including a reasonable attorneys fee; the balance thereof shall be applied to the amount due, and any surplus shall be paid over to the mortgagor; in case of deficiency the mortgagor shall pay the same with interest and the mortgagor does hereby confess judgment in the amount of such deficiency." As a defense, the defendant relies upon this provision and the fact that plaintiff consented to the repossession and sale of the truck.

Plaintiff argues that the above-quoted paragraph of the chattel mortgage is unenforceable, being contrary to public policy; and that the evidence shows he did not consent to the repossession and sale of the truck.

Conceding that the controversial part of the chattel mortgage is unenforceable, being against public policy, a view most favorable to the plaintiff, but without deciding that issue, let us pass to a consideration of the question of whether or not the plaintiff consented to what was done. While plaintiff vehemently denies that he expressly consented to the taking and disposal of the truck, the evidence shows that he did so impliedly. He does not deny that he made an engagement with Mr. Sims to meet him on Monday morning, following the Saturday upon which the truck was taken and stored at the garage. He certainly acquiesced in that arrangement. On Tuesday, he was definitely informed by Mr. Sims that he could get his truck back by going to defendant's place of business at Winnfield and paying what he owed, otherwise the truck would be disposed of. He admits that he did not go to see the defendant and that he made no further effort to recover the truck. The sole action that he took was the filing of this suit for damages on December 19th. This, we believe, was an after thought. Defendant unquestionably

afforded plaintiff many opportunities to meet the delinquent installment and he was admonished on several occasions that it must be paid. Each time the plaintiff asked for further time, and even though after November 20th there were sufficient funds available with his employer to pay this installment, he failed to pay it. His indifference in meeting his admitted indebtedness is only equal to his indifference in attempting to secure the return of the truck.

The case is very similar to that of Horton v. Kavanaugh-Hinton Motor Co., 15 La. App. 226, 131 So. 497, 498. In that case, the plaintiff bought an automobile from the defendant on credit, with a vendor's lien and chattel mortgage securing the balance. He paid three installments but failed to pay the others as they became due. A representative of the defendant called upon plaintiff and, after some discussion about the past-due indebtedness, obtained possession of the car and sold it to one of the indorsers of the chattel mortgage note. Plaintiff then instituted a suit for damages for the illegal taking and disposing of his car. In deciding the case in favor of defendant and discussing a clause similar to the one in the instant case, the court said:

"While the latter stipulation may not have been enforceable without the consent of plaintiff, he had the right to consent to such proceedings, and the evidence establishing that plaintiff had previously offered to deliver the car for the balance due on the note, and that he delivered the car to defendant as the agent of the finance company, and the circumstances attending the delivery of the automobile, show, we think, that plaintiff at least knew the car was to be sold, and we are of the opinion that plaintiff should be held to have impliedly consented to the car being sold."

This is not a case where the creditor imposed upon the debtor by intimidating him or taking hasty action. Plaintiff was afforded every reasonable opportunity to meet his obligations, which he appears to have been capable of doing, if he so desired. From his attitude and conduct in the matter, defendant reasonably concluded that plaintiff impliedly consented to the car being repossessed and sold.

The trial judge was of the opinion that the controversial clause was against public policy and that there had been a technical invasion of the plaintiff's rights, but that plaintiff's claim for damages was too speculative. Since we are of the opinion that plaintiff acquiesced in the taking and disposing of the truck, it follows that plaintiff's suit should be dismissed.

For the reasons assigned, the judgment appealed from is annulled and set aside, and it is now ordered, adjudged, and decreed that plaintiff's suit be dismissed, at his costs.

O'NIELL, C. J., absent.